THE BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF KANSAS *et al.* v. THE SYMNS GROCER COMPANY *et al.*

RAILROAD COMMISSIONERS—*Rates of Freight—Reduction—Discrimination—Injunction.* The board of railroad commissioners made a finding and decision reducing rates of freight upon car-load lots of sugar, coffee, beans, and canned goods, making them considerably less than the rates upon the same commodities when shipped in less than car-load lots. A shipper whose business mostly required the use of the rates fixed for less than car-loads, and who claimed that the proposed rates would operate to his injury, and to the benefit of other shippers who would use the car-load rates, brought an action against the board to enjoin it from promulgating and putting in force the new schedule of rates, contending, not that they were unreasonably low or unremunerative to the carrier, but that the enforcement of them, without making a reduction of the rates for the shipment of smaller quantities, was a discrimination against him which should be enjoined. *Held,* That the plaintiff had no such interest as entitled him to enjoin the board from putting in force its finding and decision, and that he was not entitled to the relief demanded.

*Error from Atchison District Court.*

THIS was an action of injunction to prevent the promulgation and enforcement of a revision of the freight rates made by the board of railroad commissioners, by which the rates on car-load lots of sugar, coffee, beans and canned goods were reduced. The action was brought by the *Symns Grocer Company*, of Atchison, on behalf of itself and others similarly situated, against the *Board of Railroad Commissioners*, the Missouri Pacific Railway Company, the Atchison, Topeka & Santa Fé Railroad Company, the Chicago, Rock Island &

Pacific Railroad Company, the Kansas City, Fort Scott & Memphis Railway Company, the Missouri, Kansas & Texas Railway Company, and the Union Pacific Railway Company. The grocer company, in its petition, alleges substantially that it was engaged in jobbing sugar, coffee, beans and canned goods throughout the state of Kansas, and that there were a number of other parties, located in Atchison, Leavenworth, Kansas City, Kas., and Fort Scott, engaged in a like business, whose interest it is to distribute commodities throughout the state in less than car-load lots, and that they had expended large sums of money in securing permanent facilities required by their business, and all are interested in the relief sought. It is further averred, that heretofore there had been established and maintained rates relatively reasonable and just between car-load and less than car-load lots of the commodities named, under which it was immaterial whether goods were shipped in car-load or less than car-load lots, and that the plaintiff had built up and established a large business in the interior of the state, relying upon its right under the law to the continuance of reasonable and nondiscriminating rates, and upon the belief that the board would never make any unfair or unreasonable discrimination between car-load lots and smaller quantities of such goods; that prior to March 1, 1892, there were established at the cities of Salina, Hutchinson, Wichita and Arkansas City firms, persons and corporations engaged in a similar business to that of plaintiff, who were competitors of plaintiff and others engaged in the business of selling job lots of the articles named, and, as such, came in direct competition with the plaintiff, and were entitled to equal and just rates on the lines of railroad without discrimination in favor of or against plaintiff; that instead of this, the board of railroad commissioners, on March 5, 1892, made and promulgated an order reducing the rates on sugar in car-load lots from Atchison and the other jobbing points in eastern Kansas to 15 cents per 100 pounds, and making the rate on canned goods, coffee and beans in car-load lots 22 cents to Salina, 25 cents to Hutchinson and Wichita,

and 28 cents to Arkansas City, whereas, the rate on less than car-load lots was permitted to remain at 34 cents per 100 pounds to Salina, 41 cents to Wichita and Hutchinson, and 49 cents to Arkansas City; that the reasonable difference between rates in car-load and less than car-load lots should not exceed 5 cents per 100 pounds, and that the rate established was unreasonable and discriminating, and, if made effective, would injure and destroy the business which had been built up by the plaintiff. It was further alleged, that the making of the order was a covert and unlawful attack on the rights of the plaintiff under the interstate-commerce laws of the United States. The Bittman-Todd Grocer Company and Rohlfing & Co., wholesale grocers, of Leavenworth, were, on their own application, made parties to the action, and joined the plaintiff in asking the relief prayed for in the petition.

The answer filed by the board of railroad commissioners recited the facts which led up to the making of the order complained of, and alleged that the rates established by it were reasonable, just, and nondiscriminative; and further, that they stood ready at all times to hear, consider and determine any matter of freight rates connected with the business done by the plaintiffs within the state of Kansas, and to adjust the same so that they might be reasonable, just, and equitable. The Chicago, Rock Island & Pacific Railroad Company answered, alleging that the rates established were unjust and unreasonable, and further, that they would not afford the railroad company a just and reasonable compensation for carrying the commodities between the points named in the order. The answers of the Union Pacific Railway Company and the Missouri, Kansas & Texas Railway Company were substantially the same. So was that of the Missouri Pacific Railway Company, which contained the further averment that the commodities named in the order were produced outside of Kansas, and were the subject of interstate commerce, over which the board had no jurisdiction to establish the rates sought to be fixed by its order. The Atchison, Topeka & Santa Fé Railroad Company filed an answer disclaiming any

14—53 KAS.

interest in the controversy, except to learn what was required of it by law, and alleging that the interior jobbers at Wichita, Hutchinson, Salina, and Arkansas City, upon whose complaint the order was made, were interested and should be made parties to the cause. The interior jobbers did intervene, and filed an answer, which, among other things, alleged that the rates established by the board of railroad commissioners upon the commodities named in its order were just and reasonable, and not discriminative.

When the action was instituted, a temporary injunction was granted by the court, and afterward a motion to dissolve this injunction was made by the board of railroad commissioners and the interior jobbers, upon the grounds: First, that the court had no jurisdiction to entertain the action or to grant the injunction; second, that the amended petition filed in the action did not state facts sufficient to constitute a cause of action; and, third, that the allegations of the petition were not true, except as admitted in the answers of the defendants. A hearing of this motion was had by the court on August 13, 1892, when it determined that the injunction should be continued, and, therefore, overruled the motion to dissolve the same. Of this ruling the plaintiffs in error complain.

*T. F. Garver, L. Houk,* and *Edwin White Moore,* for plaintiffs in error.

*John C. Tomlinson, Henry Elliston,* and *Rossington, Smith & Dallas,* for defendants in error.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for defendant in error the A. T. & S. F. Rld. Co.

The opinion of the court was delivered by

JOHNSTON, J.: For several months prior to March 5, 1892, the board of railroad commissioners had been considering the complaint of the wholesale merchants of Wichita, Hutchinson, Salina, and Arkansas City, that the freight rates upon certain merchandise were excessive, unreasonable, and unjust. After considerable controversy with the railroad companies,

the board finally reached the decision that the car-load rates on sugar, coffee, beans and canned goods were too high, and, upon the date named, a finding and decision were announced, fixing the car-load rates, from the eastern cities of the state to the interior cities which have been named, on sugar 15 cents per hundred pounds, and on the other commodities which have been mentioned at a rate of 22 cents to Salina, 25 cents to Wichita and Hutchinson, and 28 cents to Arkansas City. The decision was to become effective on March 16, 1892, but before that time, and upon the application of the Symns Grocer Company, a wholesale dealer at Atchison, a temporary order was obtained, enjoining the board of railroad commissioners, as well as the railroad companies, from putting in force the schedule of rates which the board had established. There was considerable testimony taken with respect to the cost of transportation of the commodities named, and what were reasonable charges for the same, and also as to the difference in the expense of transporting such merchandise in car-load lots and in less quantities, as well as the difference in charges usually made between the two methods of transportation. We have examined this testimony, but the view which we take renders an analysis of the same unnecessary.

At the outset, the right of the plaintiff below, a shipper, to maintain an action enjoining the board of railroad commissioners, and preventing the promulgation and enforcement of their order, is challenged. There is no contention by the plaintiff below that the rates established are too low, nor that they are unremunerative to the carrier. None of the railroad companies have appeared here, except the Atchison, Topeka & Santa Fé, and it has filed a cross petition, alleging that the court erred in granting and in sustaining the order of injunction. The rates which were fixed by the board must, therefore, be regarded as just and reasonable in themselves, and the only complaint is, that other rates are too high, and therefore the board should not be permitted to put one schedule or revision in force until another schedule has been revised and reduced. The rates established are open alike to the plaintiff below and

all other shippers who desire to send merchandise in car-load lots. Can a shipper who anticipates that at some time he will send goods in smaller quantities tie the hands and stay the action of the board which has entered upon a revision of rates, and has established a schedule for car-load lots, which of itself is confessedly just, because it has not yet reached and revised a rate for shipments of like merchandise under different conditions and in smaller quantities? We think not. It is well settled that it is competent for the state legislature to establish rates and classifications to be charged by railroad companies for the transportation of passengers or freight between points on their lines within the state, and also that this power may be largely delegated to boards of commissioners. (*Munn v. Illinois*, 94 U. S. 113; *Railroad Co. v. Minnesota*, 134 id. 418; *Budd v. New York*, 143 id. 517.)

*Railroad commissioners—rates of freight—reduction—discrimination—injunction.*

Under the act of 1883, as since amended, a code of rules is provided for the regulation and control of railroads, and it confers upon a board of railroad commissioners the power to establish or revise rates of transportation, and the finding and adjudication of that board as to rates is to be accepted by the railroad company, posted up in the depots on the line of its road, and taken as a reasonable compensation for the service for which they are provided, until the contrary is proved. The finding and adjudication of the board is *prima facie* evidence of the matters therein stated, and of what is a reasonable charge in all actions for such service. (Gen. Stat. of 1889, ¶¶ 1334, 1337, 1339, 1341.) The classification of freights and the adjustment of rates, so devolved upon the board, is a matter of considerable difficulty, as it involves so many elements, and is affected by so many circumstances. In determining what are reasonable and just rates, much discretion is necessarily invested in the board, and, so long as it acts within the limits of that discretion, its acts cannot be enjoined or interrupted. The courts cannot trench upon its jurisdiction, nor exercise the discretion and power vested in it. Members of that tribunal are presumed to have been chosen

with reference to their judgment, discretion, and special fitness, and it is presumed that by special study and experience they will become qualified to master the details and intricacies of rates and tariffs. Much of the information respecting transportation is under the control of the railroad companies, and not accessible to the occasional patron of the roads, and hence the commissioners are created with the right to inquire, to classify, and to decide. Although not clothed with all the functions of a court, they are authorized to determine what are just and reasonable rates. In a certain sense, they stand as guardians of the public, for the protection of shippers and patrons. Their determination is binding and conclusive, unless the railroad companies can show that their findings and decisions are unjust and unreasonable.

It can hardly be that the decision of a board so constituted, which is applicable to the entire state, can be stayed or set aside at the suit of an individual for whom no service has yet been performed, and who may or may not bring himself within the operation of the decision. The schedule of rates sought to be enjoined is designed for the whole state, and for all who may desire to avail themselves of it. Every shipper, and, indeed, every purchaser of the commodities shipped under the schedule established, will be more or less affected by it. It is a matter of public concern, and a private individual cannot invoke the extraordinary remedy of injunction unless he has some personal and peculiar interest not shared by the public. As has been said, "It is not enough that his damages are greater than those sustained by the general public, thus differing only in degree; but they must be different in kind." (*Comm'rs of Barber County v. Smith*, 48 Kas. 333, and cases cited.) The Symns Grocer Company may, by virtue of its larger facilities, be affected in a greater degree than other shippers in the state, but the injury, if there be one, does not differ in kind from that suffered by other shippers throughout the state who may utilize the rate in the transportation of merchandise. The matter, then, being a question of public interest, decided by a public *quasi*-judicial tribu-

nal, it would seem that a private shipper could not maintain an action to enjoin the announcement and enforcement of the decision of the board; but if for any cause an action would lie, it should be brought in the name of the state, on the relation of some public officer. Every time a schedule of rates applicable throughout the state is changed, the interests of a great many are necessarily affected. A change may operate beneficially as to some, while as to others it may not be as favorable as were the preëxisting rates. Can it be that some one of the thousands of individuals affected may challenge the reasonableness of the rate made, and maintain an action in his own name to prevent the board from putting into operation such a state schedule until he can have an adjudication as to whether it injuriously affects him? It has been well said, that if one shipper may maintain the action, another shipper liable to be affected by the rate, living in another part of the state, may likewise maintain the action, and in this way there might result a conflict in the various courts of the state. The district court in one county might find the order or rate reasonable, while the district court in another county might find it unreasonable. One court might enjoin the enforcement of the decision, and another decide that it should be put in operation. These illustrations only show the confusion that might arise if an individual or shipper who has no special interest should be allowed to enjoin the putting in effect of such a decision.

We are cited to cases where injunction was maintained by the railroad company against the enforcement of the order of such a board; but in these cases it was held to be maintainable because the rates proposed to be put in force were so unreasonable as to be confiscatory. The railroad company, being a public carrier and obliged to transport commodities offered for shipment and use its property in so doing, it was held that a provision requiring the carriage of persons or property without reward amounted to the taking of private property for public use without just compensation, or without due process of law, and hence a court of equity might pre-

vent the enforcement of such a provision. (*Railway Co. v. Day*, 35 Fed. Rep. 866; *Railroad Co. v. Minnesota*, supra; *Budd v. New York*, supra.) The shipper, however, who is not compelled to ship does not stand in such a position. He may utilize the rate prescribed, or he may not, and, if an injury is inflicted, it is not one peculiar to himself. Our attention is also called to *Schofield v. Railway Co.*, 43 Ohio St. 571; but, as will be seen, that was not a case against a board of railroad commissioners, but was an action against a railway company to prevent a plain discrimination against particular individuals. We are referred to no case which can be regarded as a precedent for the claim made in the one at bar.

As has been said, the rates sought to be enjoined are not claimed to be unreasonably low, but the complaint is that the enforcement of the same would operate injuriously to the plaintiff below, unless a corresponding reduction was made in the rates for the shipment of less than car-load lots. It may be that the rates upon smaller quantities should be reduced, and it may be that the disparity between the two classifications is so great as to result to the detriment of some of the shippers. If that be the case, the plaintiff is not without remedy. The board of railroad commissioners is a continuous body, and presumably is open at all times for the readjustment of rates, or to correct any inequalities which the practical operation of a rate or regulation may disclose. The construction of new roads, the building of trade centers and the development of the country necessarily cause a disturbance of rates, and when such changes occur and new circumstances arise, the board may be required to revise and change existing rates.

It is conceded by all that a distinction may be made between the carriage of commodities in car-load lots and in less quantities. The reasons for making such classification are easily seen. It is clear that the enforcement of a reduction of rates upon one class ought not to be prevented by judicial interference because the board has failed to reduce the rate upon another class. Under various provisions of the statute,

application may be made to the board to adjust the rates charged for the class which would embrace the shipment of smaller quantities of the commodities in question.   The fact that there may be too great a disparity between the rates charged for the two classes can hardly be treated as a statutory discrimination, within the meaning of § 10 of the act providing for the regulation and control of railroad companies. It prohibits a railroad company from charging or receiving a greater sum from one than another "for a like service from the same place, or upon like conditions and under similar circumstances."   The difference in conditions and circumstances appears to afford sufficient ground for a different classification and a different charge.   But if the classification operates prejudicially to the interests of the complaining parties, they may appeal to the board to adjust the rates and correct any inequality that may exist.   The same statute affords a complete remedy for any discrimination that may be made. In this respect it operates as a substitute for the remedy which existed at common law.   In *Beadle v. K. C. Ft. S. & M. Rld. Co.*, 51 Kas. 248, it was decided that by this act the legislature had not only given to the shipper all his remedy at the common law, but had given him a much better and broader one, whereby he was permitted to recover three times the excess of any overcharge exacted by the common carrier, or treble damages, with attorney's fees and costs.   It was said that the legislature intended that this statute should supersede the common law concerning unreasonable prices or excessive charges, and that a shipper would not be permitted to waive the statute and avoid its limitations by an action at common law, and that, a full remedy being given, the parties are and ought to be confined to it.

There is no reason for the claim that the decision of the board is an unlawful interference with interstate commerce. By its terms, it is limited to shipments from one point to another within the state, and cannot be construed to affect, or as an attempt to affect, interstate transportation.

It follows from what has been said that the order and judgment of the district court must be reversed.

All the Justices concurring.